(June 29, 1993)

■ In the Matter of MARGARET S. CHIN, Respondent, v BOARD OF ELECTIONS OF THE CITY OF NEW YORK, Appellant, and KATHRYN E. FREED, Respondent, et al., Respondents. [599 NYS2d 569] —Order of the Supreme Court, New York County (Martin Evans, J.), entered on November 1, 1991, which confirmed the Referee's report and accordingly dismissed the petition alleging election fraud, but ordered respondent to implement remedial measures for future elections, unanimously modified, on the law, to the extent of vacating so much of the order as directed respondent Board of Elections to provide appropriate translation of election materials, interpreters, and to permit polling place assistants in districts in which more than 5% of the voting age population is of separate Asian extraction, and otherwise affirmed, without costs.

Petitioner, an unsuccessful candidate in the Democratic primary election for City Council in 1991, sought to set aside the election pursuant to Election Law § 16-102 (3), which authorizes the court to order "the holding of a new primary election * * * where it finds there has been such fraud or irregularity as to render impossible a determination as to who rightfully was nominated or elected." The IAS Court referred the matter to Julius Birnbaum to report. After conducting hearings, the Referee recommended that the petition be dismissed. The IAS Court confirmed the report and dismissed the petition, but ordered that in future elections, in districts within the City of New York which contain "any separate Asian language population of more than 5% of the citizens of voting age residing in that district", all election materials must be offered in the language native to that population, interpreters appropriate to the separate Asian language population must be made available, and non-English speaking Asian voters must be permitted to bring a person of their

choice into the voting machine to assist in reading the ballot and operating the machine.

In New York City, for the election here challenged, election materials were provided in Spanish and English pursuant to 42 USC § 1973b (f). No other minority group had been certified as having met the threshhold requirements of the Voting Rights Act in New York.

The IAS Court cited no authority other than "evenhandedness" for imposing the above-described requirements in future elections. Although it is argued on appeal that the failure to impose such requirements would result in a denial of equal protection, it is clear that the Federal Voting Rights Act, which would not necessarily prohibit the differential treatment the IAS Court sought to ameliorate, would not for that reason offend the Federal Constitution's guarantee of equal protection (see, *Burdick v Takushi*, 504 US —, 112 S Ct 2059). Nor do we think that there exists any basis to suppose that the State Constitution would under the circumstances here presented provide protection in excess of that required by its Federal counterpart (see, *Under 21 v City of New York*, 65 NY2d 344, 360, n 6; *Matter of Esler v Walters*, 56 NY2d 306, 313-314; *see also, Golden v Clark*, 76 NY2d 618, 624). Accordingly, given the IAS Court's confirmation of the Referee's findings that there had been no irregularities in the contested election warranting its invalidation, the petition ought simply to have been dismissed without the imposition of any prospective remedial requirements. Concur—Murphy, P. J., Milonas, Ross and Asch, JJ.